United States District Court
Southern District of Texas
**ENTERED**
June 17, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|   |   |
|---|---|
| GHI Energy, LLC, § § § *Plaintiff*, § § v. § § Entrypoint RNG Partners, LLC, § § *Defendant*. § § § | Civil Action No. 4:24-cv-01592 |

### MEMORANDUM, RECOMMENDATION, AND ORDER

Multiple motions are pending in this contract dispute between Plaintiff/Counter-Defendant GHI Energy, LLC ("GHI") and Defendant/Counter-Plaintiff Entrypoint RNG Partners, LLC ("Entrypoint"). Entrypoint filed a motion to compel discovery against GHI and UGI Energy Services LLC, a third-party defendant in this case. Dkt. 23. GHI moved for partial summary judgment to construe key terms in its contract with Entrypoint, Dkt. 25, which motion Entrypoint requests that the Court deny or defer pending discovery, Dkt. 33. GHI also moved to strike parts of Entrypoint's reply in support of its motion to deny or defer. Dkt. 45.

After carefully considering the motions, Dkt. 23, 25, 33, 45, the responses, Dkt. 27, 35, 41, 48, the record, and the applicable law, it is recommended that GHI's motion for partial summary judgment (Dkt. 25) be

granted, and that Entrypoint's interrelated motion to deny or defer (Dkt. 33) be denied. It is further ordered that Entrypoint's motions to compel (Dkt. 23) and GHI's motion to strike (Dkt. 45) are both denied.

## Background

The facts are largely undisputed. GHI Energy was founded in 2011 by John Greene, who served as its president. Dkt. 35-2 at 2. Clarke Anderson joined as vice president in 2012. *Id.* GHI was one of the first companies to work in the natural gas arena of California's Low Carbon Fuel Standard ("LCFS") and the federal Renewable Fuel Standard ("RFS"). *Id.* at 2-3. It buys renewable natural gas ("RNG") from production facilities and sells it as fuel to vehicle fleets. Dkt. 25-1 at 2. Those sales generate credits that GHI then sells either to brokers or directly to refineries that need them to comply with regulatory requirements. *Id.*

UGI Energy Services LLC ("UGIES") acquired GHI in July 2020. *Id.* at 1. Greene and Anderson formed Entrypoint to receive compensation for managing GHI during the transition to new management. *Id.* at 2.

### A.   The Management Services Agreement

As part of GHI's sale to UGIES, Greene and Anderson executed a Management Services Agreement ("MSA") on Entrypoint's behalf, on July 8, 2020. *See* Dkt. 26 at 1, 29-31; Dkt. 25-1 at 1; Dkt. 35-2 at 5. The MSA had a three-year term. *See* Dkt. 26 at 16. Under the MSA, Entrypoint would perform

certain "Business Services" for GHI, including marketing and monetizing credits for GHI's benefit, "cultivating relationships with prospective Customers throughout California," and advising UGIES on RNG investment opportunities and RFS and LCFS revenue maximization. *See* Dkt. 26 at 33-34 (Exhibit B to MSA). In exchange, GHI promised to pay Entrypoint an annual $325,000 management fee and, in Section 5.2, an annual Long-Term Management Incentive ("LTMI") Payment. Dkt. 26 at 13-14, 36-38; *see also* Dkt. 25-1 at 2-3; Dkt. 35-2 at 5.

The MSA specified how LTMI Payments would be calculated. Dkt. 26 at 36-38 (Exhibit D, Long-Term Management Incentive Payment); *see also id.* at 14 (MSA § 5.2, "Long-Term Management Incentive Payment calculated as set forth in Exhibit D"). As stated in the attached Exhibit D, the LTMI Payment for each fiscal year from October 1, 2020 to September 30, 2025 is based on GHI's and any other UGIES Entity's EBITDA[1] performance. *Id.* at 36.

The formula for LTMI Payment calculations depends on whether "the aggregate amount of [GHI's] and any other *UGIES Entity'*s EBITDA generated from *Customers* located in California for an applicable UGIES fiscal year"

---

[1] The MSA defines EBITDA as "earnings before interest, taxes, depreciation, and amortization determined in accordance with GAAP [generally accepted accounting principles] and the methodology set forth in Exhibit D." *See* Dkt. 26 at 8.

3

exceeds $6,500,000.[2] *See id.* (emphasis added). If it does, then the LTMI Payment is 25% of the difference, plus 10% of the aggregate EBITDA from "Customers" outside California for that fiscal year. *See id.* at 36. If the aggregate is less than or equal to $6.5 million, however, the LTMI Payment is 10% of the amount, if any, "by which [GHI's] and any other *UGIES Entity*'s aggregate EBITDA generated [from] all Customers exceeds" $6,500,000. *See id.* (emphasis added). In any event, the LTMI Payment is capped at $1,000,000 for FY 2021-22 and $4,500,000 for FY 2023-25. *See id.*

In the MSA, the term "UGIES Entity" is defined as "UGIES and any subsidiary entity that is directly or indirectly wholly-owned by UGIES." *See id.* at 10. And "Customer" is "any person that purchases Compressed Natural Gas or Liquefied Natural Gas directly from Owner [GHI] or any other UGIES Entity for use as fuel in a vehicle that results in the generation of Credits for which Owner or such other UGIES Entity receives revenues from the sale of such credits." *See id.* at 7.

Exhibit D also specifies which revenues and expenses should be included in the EBITDA calculation. *See id.* at 37. As relevant here, the revenue line items include:

- Natural Gas Sales to Customers
- Sale of Gas Supply Commodity (RNG sale in local markets)

---

[2] For the fiscal year ending September 30, 2020, the relevant threshold is $1,725,000. *See* Dkt. 26 at 37-38 (MSA, Exhibit D).

4

- Sale of RINs
- Sale of LCFS Credits

*See id.* The MSA also grants Entrypoint the right to audit GHI's and UGIES's "books and records relating to the determination of the [LTMI] Payment" during the contract term and for three years after it expires. *See id.* at 14.

### B. GHI's LTMI Payments

After purchasing GHI in 2020, UGIES invested in RNG production facilities that work with landfills and dairy farms to produce natural gas. *See* Dkt. 25-1 at 3-4. It made these investments as joint ventures with third parties (the "Joint Ventures") through a subsidiary, UGI Biofuels, LLC, which invested in the Joint Ventures through its subsidiary holding companies. *See id.* at 3. As their moniker indicates, the Joint Ventures themselves, which are jointly owned by third-party producers, are only partially owned by UGI Biofuels, LLC's subsidiaries.

In the meantime, GHI made LTMI payments to Entrypoint of $1,250,000 in 2021 and $95,834 in 2022. *See id.* at 2-3. But for 2023, GHI calculated the aggregate EBITDA as $5,208,939—less than the $6.5 million threshold. *See id.* at 4. Based on that calculation, GHI maintained that it did not owe an LTMI Payment. *See id.*

5

### C. This suit

GHI sued Entrypoint in April 2024, seeking restitution of an alleged $95,834 overpayment and declaratory judgment on payments made during fiscal years 2022 and 2023. Dkt. 1 at 9-12. Entrypoint counterclaimed against GHI and Third-Party Defendant UGIES for breach of contract and declaratory judgment. Dkt. 8 at 44-47. Both counterclaims dispute GHI's calculation of LTMI Payments, asserting that GHI improperly excluded revenues from the Joint Ventures when determining the aggregate EBITDA. *See id.* at 37, 40. Entrypoint also sought declaratory judgment on its right to audit the financial records of all entities involved in the Joint Ventures, not just GHI and UGIES. *See id.* at 46-47.

On October 24, 2024, Entrypoint filed a motion to compel discovery. Dkt. 23. GHI responded, Dkt. 27, and Entrypoint replied, Dkt. 32. GHI then moved for partial summary judgment to address two interpretive issues under the MSA: (1) whether revenue from the Joint Ventures through UGIES's partially owned subsidiaries counts toward the LTMI Payments; and (2) whether natural gas sales to GHI by third-party producers in the Joint Ventures qualifies as "Natural Gas Sales to Customers" that affects LTMI Payment calculations. *See* Dkt. 25 at 7, 15-22, 23-25. Entrypoint responded, Dkt. 35, and GHI replied, Dkt. 39.

In the interim, however, Entrypoint filed a motion to deny or defer consideration of GHI's motion for partial summary judgment under Fed. R. Civ. P. 56(d), Dkt. 33, which GHI opposed, Dkt. 41. *See also* Dkt. 44 (Entrypoint's reply). GHI also moved to strike Entrypoint's reply in support of its deferral motion as an improper surreply, Dkt. 45, which Entrypoint opposed, Dkt. 48. The motions are ripe for resolution.

### **Legal standard**

Summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material if the issue it addresses "could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379-80 (5th Cir. 2020) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)).

When resolving a motion for summary judgment, courts must view the facts and any reasonable inferences "in the light most favorable to the nonmoving party." *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010) (quotation omitted). "[T]he court must disregard all evidence favorable to the moving party that the jury is not required to believe, and

7

should give credence to the evidence favoring the nonmoving party ….." *Union Pac. Res. Grp., Inc. v. Rhone-Poulenc, Inc.*, 247 F.3d 574, 584 (5th Cir. 2001). In addition, courts must credit all reasonable inferences from the evidence, without "weigh[ing] evidence or mak[ing] credibility findings." *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 476 (5th Cir. 2022). But "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Luna v. Davis*, 59 F.4th 713, 715 (5th Cir. 2023) (quoting *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003)).

## Analysis

**I.   GHI's motion for partial summary judgment**

GHI's motion for partial summary judgment raises two contract interpretation issues that affect Entrypoint's counterclaim theory that GHI failed to pay the full LTMI due under the MSA. The answer has a material impact on the scope of Entrypoint's damages. As explained below, the MSA's plain language provides unambiguous answers that render it improper to consider extrinsic evidence. That conclusion further forecloses Entrypoint's requests to defer this ruling pending discovery that, as a matter of law, is immaterial to the answer.

### A.   Legal principles: contract interpretation

The parties agree that Pennsylvania law controls. *See* Dkt. 25 at 14; Dkt. 35 at 19. That position comports with the MSA, which specifies that "[t]his Agreement is governed by and shall be construed in accordance with" Pennsylvania law. Dkt. 26 at 27 (¶ 16.6, "Governing Law; Severability"). Neither side has suggested that other choice-of-law principles should override the contractual choice-of-law provision. Pennsylvania law therefore applies.

Under Pennsylvania law, "the intention of the parties is a paramount consideration" when interpreting contracts. *Riverview Carpet & Flooring, Inc. v. Presbyterian SeniorCare*, 299 A.3d 937, 983 (Pa. Super. Ct. 2023) (citing *Profit Wize Marketing v. Wiest*, 812 A.2d 1270, 1274 (Pa. Super. Ct. 2002)). "When the words of a contract are clear and unambiguous, the intent of the parties is to be discovered from the express language of the agreement." *In re Est. of Schaefer*, 300 A.3d 1013, 1019 (Pa. Super. Ct. 2023) (quoting *In re Estate of Blumenthal*, 812 A.2d 1279, 1286 (Pa. Super. Ct. 2002)). "The whole instrument must be taken together in arriving at contractual intent." *Murphy v. Duquesne Univ. of The Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001) (citing *Felte v. White*, 302 A.2d 347, 351 (Pa. 1973)).

"A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 483 (Pa. 2009) (quotation

9

omitted). There is no ambiguity if one of the two proffered meanings is unreasonable. *See id.* (citing *Murphy*, 777 A.2d at 430). Courts will not "distort the meaning of the language or resort to a strained contrivance … to find an ambiguity." *Id.* (quoting *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)). "Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties." *Murphy*, 777 A.2d at 429-30 (citing *Hutchison v. Sunbeam Coal Co.*, 519 A.2d 385, 390 (Pa. 1986)). "The language of a contract is unambiguous if [the Court] can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends." *Riverview Carpet & Flooring,* 299 A.3d at 983.

Unambiguous contracts "are construed by the court as a matter of law." *Trizechahn Gateway*, 976 A.2d at 483 (citing *Kripp v. Kripp,* 849 A.2d 1159, 1163 (Pa. 2004)). "In the absence of an ambiguity, the plain meaning of the agreement will be enforced." *Murphy*, 777 A.2d at 430 (citing *Gene & Harvey Builders, Inc. v. Penn. Mfrs.' Ass'n Ins. Co.,* 517 A.2d 910, 913 (Pa. 1986)).

### B. The MSA unambiguously excludes sales revenue from partially owned subsidiaries.

GHI argues that the MSA's plain language limits LTMI Payment calculations to revenue earned from sales by UGIES and its wholly owned subsidiaries. *See* Dkt. 25 at 15; Dkt. 39 at 9. Citing the contractual definition

10

of "UGIES Entity," GHI contends that revenue from the Joint Ventures—which UGIES's subsidiaries *partially* own—is not revenue from "any subsidiary entity that is directly or indirectly *wholly-owned* by UGIES." *See* Dkt. 25 at 16 (quoting Dkt. 26 at 7) (emphasis added); Dkt. 39 at 9. It further argues that Entrypoint's interpretation of the MSA is unreasonable and would lead to absurd results like double-counting of revenue. *See* Dkt. 25 at 19-21. As a backstop, GHI proffers extrinsic evidence that purports to show this interpretation of the MSA comports with the parties' intent that LTMI Payments incentivize Entrypoint to grow GHI's business of RNG marketing. *See id.* at 21 (citing Dkt. 25-1, Declaration of Anthony Cox).

In response, Entrypoint argues that the parties' intent, as manifest in the MSA's language and contemporaneous communications prior to UGIES's acquisition of GHI, was for the LTMI calculation to encompass all revenue received or recognized by UGIES entities, including the Joint Ventures. *See* Dkt. 35 at 21-23. According to Entrypoint, UGIES's wholly owned subsidiary companies recognize a proportional share of earnings from the interests they own in joint venture producers—which should be included in the EBITDA calculation for LTMI Payments. *See id.* at 22, 26. Entrypoint suggests that the Joint Ventures reflect GHI's attempt to divert earnings away from the annual LTMI Payments owed to Entrypoint. *See id.* at 25-26. In sum, Entrypoint argues that the parties intended for Entrypoint to be compensated

11

based on the entire vertically-integrated RNG business, rather than just the activity of UGIES's wholly owned subsidiaries. *See id.* at 28.

GHI has the better of the argument. Critically, Entrypoint misapplies the legal standard for determining the parties' intent behind contractual language. Dkt. 35 at 19-21. Entrypoint states the correct proposition, namely that "the parties' intent is the <u>most</u> important aspect" in contract interpretation. *See id.* at 19. But it then resorts to using extrinsic evidence to show the parties' intent. *See id.* at 20 (citing Dkt. 35-2, Ex. 2, Declaration of John M. Greene; Dkt. 36-3, Ex. 5, May 15, 2020 letter from Anthony Cox to Billy O'Neil; Dkt. 36-4, Ex. 6, May 27, 2020 Energy Services presentation on RNG Strategy; Dkt. 36-5, Ex. 7, statement of David Lindenmuth). That is not permissible.

Under Pennsylvania law, extrinsic evidence may "be considered to determine the intent of the parties" *only* when "a contract's language is ambiguous …." *Murphy*, 777 A.2d at 429-30. Contrary to Entrypoint's contention, the parties' competing declarations about their subjective intent cannot manufacture a factual dispute if the contract itself is unambiguous. *See id.*; Dkt. 35 at 10. And whether ambiguity exists is a question of law. *See Hutchison*, 519 A.2d at 390. Absent ambiguity, neither Entrypoint's nor GHI's extrinsic intent evidence may be considered. *See* Dkt. 25 at 21 (citing Dkt. 25-1, Ex. 1, Declaration of Anthony Cox); Dkt. 35 at 20

(citing Dkt. 35-2, Ex. 2, Declaration of John M. Greene; Dkt. 36-3, Ex. 5, May 15, 2020 letter from Anthony Cox to Billy O'Neil; Dkt. 36-4, Ex. 6, May 27, 2020 Energy Services presentation on RNG Strategy; Dkt. 36-5, Ex. 7, statement of David Lindenmuth).

The MSA's narrow definition of "UGIES Entity" clearly and unambiguously excludes Joint Venture revenue from the LTMI calculation. Exhibit D limits the LTMI Payment to GHI's and "any other UGIES Entity's EBITDA performance." *See* Dkt. 26 at 36. Similarly, the LTMI formula is based on the "aggregate amount of [GHI's] and any other UGIES Entity's EBITDA ...." *See id.* at 36-38. The MSA expressly defines "UGIES Entity" as "UGIES and any subsidiary entity that is directly or indirectly *wholly-owned* by UGIES." *Id.* at 10 (MSA § 1.1) (emphasis added). Because the Joint Ventures are only partially-owned by UGIES, their revenue does not count.

Entrypoint attempts to circumvent that language by focusing on other terms. *See* Dkt. 35 at 21-22. The use of broad words like "aggregate" and "any other entity," according to Entrypoint, justifies including the Joint Ventures. *Id.* This approach, however, violates the principle that the entire agreement "must be taken together in arriving at contractual intent." *See Murphy*, 777 A.2d at 429. And here, the operative language, with the pertinent definition of "UGIES Entity" included, says that LTMI depends on the "aggregate amount" of EBIDTA of GHI and "UGIES and any subsidiary entity that is

13

directly or indirectly *wholly-owned* by UGIES." Dkt. 26 at 10, 36-38 (emphasis added). By confining the relevant EBIDTA to that of GHI, UGIES, and UGIES's wholly-owned subsidiaries, only those entities' EBIDTAs can be aggregated for the LTMI calculation. Entrypoint cannot rewrite the contract to include UGIES's partially-owned Joint Ventures that the MSA's definition of "UGIES Entity" explicitly excludes.[3] *See Swarner v. Mut. Ben. Grp.,* 72 A.3d 641, 646-50 (Pa. Super. Ct. 2013) (applying the plain meaning of a term that was unambiguously defined in the contract); *Krizovensky v. Krizovensky,* 624 A.2d 638, 643 (Pa. Super. Ct. 1993) (rejecting a party's interpretation that "changes the meaning of a clearly defined term" and would "re-write a contract"). GHI is entitled to summary judgment on this issue.

### C. The MSA also unambiguously excludes sales from third-party joint venturers to non-"Customer" GHI.

GHI argues that the LTMI Payment calculations expressly exclude natural gas sales by the Joint Ventures to GHI, even if GHI later sells the natural gas to customers. *See* Dkt. 25 at 23. GHI maintains that the MSA's EBITDA methodology is conditioned on earnings "generated from Customers" and that the definition of "Customers" is limited to persons who purchase gas

---

[3] For related reasons, GHI's objections to Entrypoint's Exhibits 2 through 18 (Dkt. 35-2, 35-8 to 35-12, 35-18, 36-1 to 36-10) as inadmissible extrinsic evidence are sustained. Dkt. 39 at 5-6. As already noted, such extrinsic evidence cannot alter unambiguous contractual language.

14

*directly* for use as vehicle fuel that results in the generation of credits whose sale generates revenue for GHI or another UGIES Entity. *See id.* at 23-24 (citing Dkt. 26 at 36-37, MSA's Exhibit D); *see also* Dkt. 39 at 12.

Entrypoint responds that the MSA contains no provision limiting the EBITDA calculation to only those entities that sell RNG to Customers. *See* Dkt. 35 at 25. It contends that an entity that does not sell gas directly to customers nevertheless executes other transactions that contribute to aggregate EBITDA. *See id.*

GHI is correct that the MSA unambiguously excludes Joint Venture gas sales to GHI from the LTMI calculation. The LTMI formula considers the "aggregate amount of [GHI's] and any other UGIES Entity's EBITDA *generated from Customers.*" *See* Dkt. 26 at 36-38 (emphasis added). The EBITDA methodology chart includes only "Natural Gas Sales *to Customers.*" *See id.* at 37 (emphasis added). The definition of "Customer" is "any Person that purchases Compressed Natural Gas or Liquefied Natural Gas *directly from* Owner or any other UGIES Entity for use as fuel in a vehicle that results in the generation of Credits for which Owner or such other UGIES Entity receives revenues from the sale of such Credits." *See id.* at 7 (MSA § 1.1, Definitions) (emphasis added).

By limiting aggregate EBITDA to that "generated from Customers," the LTMI formula includes only EBIDTDA generated from persons who purchase

15

gas "directly from" either GHI, UGIES, or UGIES's wholly-owned subsidiaries. Sales by Joint Ventures to GHI do not qualify because GHI is not purchasing the gas from itself, from UGIES, or from a wholly-owned UGIES subsidiary. And GHI's eventual re-sale of that same gas to qualified "Customers" does not transform the *original* sale by the Joint Ventures to GHI, as an intermediary, into a *direct* purchase from GHI, UGIES, or a UGIES's wholly-owned subsidiary. Instead, in that chain of events, only GHI's subsequent sales of the gas to outside parties *are* counted for LTMI purposes, as purchases by "Customers" made "directly from" GHI.

The MSA's plain language limiting LTMI calculations to revenue from "Customers" and excluding GHI's gas purchases from the Joint Ventures should be enforced. *See Swarner,* 72 A.3d at 646-50; *Krizovensky,* 624 A.2d at 643; *Murphy*, 777 A.2d at 430. Summary judgment is warranted on this issue.

### D. There is no reason to defer construing the MSA's plain and unambiguous language.

As a backstop, Entrypoint asked the Court to defer resolving the motion for summary judgment pending discovery, invoking Fed. R. Civ. P. 56(d). Dkt. 33; *see also* Dkt. 35 at 18-19. As Entrypoint acknowledges, Rule 56(d) deferrals are appropriate only if "additional discovery will create a genuine issue of material fact ...." *See* Dkt. 33 at 4 (quoting *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 816 (5th Cir. 2017)). Yet Entrypoint's contentions about the need

16

to develop certain facts presuppose that those facts are properly considered when construing the MSA. Because the MSA unambiguously forecloses counting revenue from the Joint Ventures and their sales of gas to GHI when determining LTMI Payments, no amount of discovery to explore extrinsic evidence can change that result. *See, e.g., Murphy*, 777 A.2d at 429-30 (considering parol evidence only when contract is ambiguous). Entrypoint's Rule 56(d) request is denied. The Court further denies as moot GHI's motion to strike (Dkt. 45) portions of Entrypoint's reply in support of deferring the motion for partial summary judgment.

## II.    Entrypoint's motion to compel discovery

The disposition of GHI's motion for partial summary judgment affects Entrypoint's pending motion to compel certain discovery. *See* Dkt. 23. This is because Entrypoint seeks many documents concerning the Joint Ventures that this opinion deems irrelevant. Moreover, even with respect to other issues, it is apparent that the parties have not fully conferred.

Entrypoint's motion to compel (Dkt. 23) is therefore denied without prejudice to raising the issues through the undersigned's pre-motion conference procedures,[4] but <u>only if</u>: (1) the parties fully confer about each and every issue, in good faith, yet cannot reach an agreement; and (2) with respect

---

[4] *See* Judge Yvonne Y. Ho, Court Practices and Procedures § 5(b).

to all documents constituting parol or extrinsic evidence deemed irrelevant by this opinion, the Court does not subsequently adopt this Memorandum and Recommendation to grant GHI's motion for partial summary judgment.

## Recommendation and Order

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff GHI Energy, LLC's motion for partial summary judgment (Dkt. 25) be **GRANTED**, and that Defendant Entrypoint RNG Partners, LLC's motion to defer or deny GHI's motion for partial summary judgment (Dkt. 33) be **DENIED**.

It is further **ORDERED** that Entrypoint's motion to strike (Dkt. 45) be **DENIED AS MOOT**.

It is **ORDERED** that Entrypoint's motion to compel discovery (Dkt. 23) be **DENIED** without prejudice, consistent with the limitations stated above.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.** *Ortiz v. City of San Antonio Fire Dep't*, **806 F.3d 822, 825 (5th Cir. 2015).**

Signed on June 17, 2025, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge